# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

September 24, 2004

MEMORANDUM TO COUNSEL OR PARTIES

FILED by _H.H._ D.C.
APPEALS

SEP 2 8 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S D OF FLA    MIAMI

**Appeal Number: 02-16163-BB**
Case Style: Access Now, Inc. v. Southwest Airlines Co.
District Court Number:  02-21734 CV-PAS

The enclosed certified copy of this Court's Order of Dismissal is issued as the mandate of
this court.  Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a
motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of
such order.  No additional time shall be allowed for mailing."

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Regina Veals-Gillis (404) 335-6163

Encl. *set ree out fl.*
*(1) VOL FL*
*(1) ACC FOL*

DIS-4  (3-2003)

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 02-16163

---

D. C. Docket No. 02-21734 CV-PAS

ACCESS, NOW, INC., a Florida non-profit corporation,
ROBERT GUMSON,

Plaintiffs-Appellants,

versus

SOUTHWEST AIRLINES COMPANY,
a Texas corporation,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Florida

---

Before TJOFLAT and MARCUS, Circuit Judges, and MUSGRAVE*, Judge.

MARCUS, Circuit Judge:

---

*Honorable R. Kenton Musgrave, Judge, United States Court of International Trade, sitting by designation.

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
> SEP 24 2004
> THOMAS K. KAHN
> CLERK

The plaintiffs, Access Now, Inc. and Robert Gumson, appeal the district court's Rule 12(b)(6) dismissal of their claim against the defendant Southwest Airlines Company ("Southwest") under the Americans with Disabilities Act ("ADA"). The case centers around the inaccessibility of Southwest's web site, Southwest.com, to individuals like Mr. Gumson who are visually impaired and use the Internet through a special software program called a "screen reader." Some features of Southwest.com make it very difficult for the visually impaired to access using a screen reader. The plaintiffs claim that this limitation places Southwest.com in violation of Title III of the ADA, which requires privately operated "places of public accommodation" to be accessible to disabled individuals. Unfortunately, we are unable to reach the merits of this case, however, because none of the issues on appeal are properly before us. Accordingly, we are constrained to dismiss the appeal.

## I.

The facts and procedural history in this case, which involves the application of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, to the Internet web site of Southwest Airlines, Southwest.com, are not in dispute. Southwest Airlines, the fourth-largest American domestic air carrier, first created

Southwest.com in April 1996, making it the first major American airline to establish a web site. Now, Southwest.com allows individuals to check fares and schedules, make flight reservations, and learn about Southwest sales and promotions. The web site allows visitors to book reservations for hotels and car rentals. It also allows visitors to obtain transfers between the airport and the hotel, or elsewhere, travel insurance, tickets to local attractions, and other information about destinations. Southwest.com offers a "do it yourself" reservation system allowing customers to book and pay for airline flights as well as hotel rooms and rental cars. Exclusively through its web site, Southwest offers "click and save Internet specials" that provide weekly discounts on plane tickets, hotel rooms, car rentals, and vacation packages. Southwest.com also offers a "rapid rewards" program that offers incentives to make purchases on the site. According to company factsheets, approximately 46 percent, or over $500 million, of Southwest's passenger revenue for the first quarter of 2002 was generated by online bookings via Southwest.com. However, none of these revenues apparently came from web surfers with serious vision impairments.

Robert Gumson is one of 1.5 million Americans with vision impairments who use the Internet. Being blind, Gumson is unable to use a computer monitor or a mouse. To overcome this difficulty, Gumson has installed on his computer a

"screen reader," which is an inexpensive software program that converts graphic and textual information on his monitor into speech that an electronically synthesized voice reads out through the computer's speakers. Using the screen reader has enabled Gumson to access web browsers, e-mail, and other computer functions. Many sites on the World Wide Web are accessible to the visually impaired by the use of screen readers. Southwest.com, however, is not among them. Its unlabeled graphics, inadequately labeled data tables, online forms inaccessible to the blind, and lack of a "skip navigation link" make it all but impossible for Gumson and other visually impaired individuals to access the features and services of Southwest.com. Because he cannot access Southwest.com, Gumson cannot take advantage of the beneficial services and information available to the site's visitors.

Mr. Gumson and Access Now, Inc., a nonprofit advocacy organization for disabled individuals, brought suit in the United States District Court for the Southern District of Florida, seeking a declaratory judgment that Southwest.com violates (1) the ADA's communication barriers removal provision; (2) the ADA's auxiliary aids and services provision; (3) the ADA's reasonable modifications provisions; and (4) the ADA's full and equal enjoyment and participation provisions. They asked the district court to enjoin Southwest from continuing to

4

violate the ADA, to order it to make Southwest.com accessible to the blind, and

for attorneys' fees and costs.  Southwest moved to dismiss for failure to state a

claim, pursuant to Fed. R. Civ. P. 12(b)(6).  The district court granted the motion

and dismissed the claim with prejudice, finding that Southwest.com is not a place

of public accommodation and therefore not covered under Title III.  Access Now,

Inc. v. Southwest Airlines, Co., 227 F. Supp. 2d 1312, 1322 (S.D. Fla. 2002).  This

appeal ensued.

## II.

The case before us hinges entirely on a question of statutory construction,

addressing whether Southwest may have violated Title III by making

Southwest.com inaccessible to the visually impaired.  We review the district

court's dismissal pursuant to Rule 12(b)(6) de novo, applying the same legal

standard that the district court did.  Hoffman-Pugh v. Ramsey, 312 F.3d 1222,

1225 (11th Cir. 2002).  Dismissal under Rule 12(b)(6) is appropriate "only if it is

clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations" of the complaint.  Hishon v. King & Spalding, 467

U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

However, we are unable to reach the merits of the plaintiffs' claim because, simply put, they have presented this Court with a case that is wholly different from the one they brought to the district court. As we see it, the plaintiffs have abandoned the claim and argument they made before the district court, and in its place raised an entirely new theory on appeal -- one never presented to or considered by the trial court.

In their complaint before the district court, the plaintiffs alleged:

> The SOUTHWEST.COM website is a <u>public accommodation</u> as defined by Title III of the ADA, 42 U.S.C. § 12181(7), in that it is a <u>place</u> of exhibition, display and a sales establishment. SOUTHWEST has discriminated and continues to discriminate against Plaintiffs, and others who are similarly situated, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their website (SOUTHWEST.COM) in derogation of the ADA.

Complaint ¶ 9 (emphasis added). The complaint then detailed the various ways in which the web site was inaccessible to the visually impaired, including, for example, by failing to provide "alternative text" to make it possible for a screen reader program to use and failing to provide accessible online forms. <u>See</u> <u>id.</u> ¶ 10-14.

The plaintiffs' four claims for relief in the complaint all hinged on their inability to access the Southwest.com web site (purportedly a <u>place</u> of public

accommodation), without any reference to any connection or "nexus" with any other goods or services (such as travel services) provided by Southwest Airlines. Specifically, Count I alleged that the "website denies access to Plaintiffs through the use of a screen reader and therefore, violates the communications barriers removal provision of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iv), because it constitutes a failure to remove existing communications barriers from the website." Id. ¶ 18. Count II, in turn, claimed that "Defendant's website violates the auxiliary aids and services provision of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), because it constitutes a failure to take steps to ensure that individuals who are blind are not denied access to the website, and does not provide an effective method of making this 'visually delivered material available to individuals with visual impairments.'" Id. ¶ 22 (citing 42 U.S.C. § 12102(1)(b)). Count III said that "Defendant's website denying access to the Plaintiffs to use it through a screen reader violates the reasonable modifications provisions of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), in that it constitutes a failure to make reasonable modifications to policies, practices and procedures necessary to afford access to the website to persons who are blind." Id. ¶ 25. Finally, Count IV alleged that "Defendant's internet website violates the full and equal enjoyment and participation provisions of the ADA pertaining to access to goods and services

7

and advantages offered by SOUTHWEST.COM (42 U.S.C. §§ 12182(a),

12182(b)(1)(A)(i), and 12182(b)(1)(A)(ii)), in that it constitutes a failure to make

the website fully accessible and independently usable by individuals who are

blind." Id. ¶ 27. All of the counts in the complaint thus focused entirely on the

inaccessibility of the web site itself as a place of public accommodation, making

no connection between Southwest.com and any other supposed place of public

accommodation.

Moreover, in their memorandum filed with the district court in response to

Southwest's motion to dismiss, the plaintiffs again reiterated that their Title III

claim was based on the simple idea that Southwest.com was itself a place of public

accommodation. Thus, one major section heading in the response was entitled

"Southwest.com is a 'Place of Public Accommodation.'" Memorandum in

Response to Motion to Dismiss Complaint with Prejudice at 3. The plaintiffs

began this section noting: "Central to defendant's attack is that the Southwest.com

website is not a place of 'public accommodation.'" Id. The plaintiffs then

attempted to rebut the argument, but notably did not say that Southwest, in arguing

that Southwest.com is not a place of public accommodation, had somehow

mischaracterized their argument. Instead, they addressed head-on the website-as-

8

public-accommodation claim, again making it abundantly clear that this was their argument.

In a comprehensive order dismissing the case, the district court also focused entirely on the plaintiffs' argument that the web site itself was a place of public accommodation; indeed, it had no opportunity to address any other claim or argument because that was the only one the plaintiffs presented. In holding that the plaintiffs had failed to state a claim upon which relief could be granted, the district court observed, in a section heading of the opinion, that "Southwest.com is Not a 'Place of Public Accommodation' as Defined by the Plain and Unambiguous Language of the ADA." Access Now, 227 F. Supp. 2d at 1317. The court examined the relevant statutory text and case law supporting this conclusion. See id. at 1317-19. It said that "the plain and unambiguous language of the statute and relevant regulations does not include Internet websites among the definitions of 'places of public accommodation.'" Id. at 1318. According to the district court, "to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure. To expand the ADA to cover 'virtual' spaces would be to create new rights without well-defined standards." Id. The court determined that the three categories of public accommodation purportedly covered by Title III -- "exhibition," "display," and "sales establishment" -- "are

limited to their corresponding specifically enumerated terms, all of which are physical, concrete structures." Id. at 1319.

The opinion's next section was entitled "Plaintiffs Have Not Established a Nexus Between Southwest.com and a Physical, Concrete Place of Public Accommodation." Id. at 1319. The court came to this conclusion not because the plaintiffs had tried and failed to establish some connection between the web site and a physical location, but rather because the plaintiffs never attempted to establish any such link, instead arguing that no link to a physical location was necessary for a website to be covered by Title III. See id. at 1319-21. The court concluded that "because the Internet website, southwest.com, does not exist in any particular geographical location, Plaintiffs are unable to demonstrate that Southwest's website impedes their access to a specific, physical, concrete space such as a particular airline ticket counter or travel agency." Id. at 1321. Accordingly, the district court dismissed the plaintiffs' complaint with prejudice. Id. at 1322.

The plaintiffs have not appealed from the determination made by the district court that Southwest.com is not a place of public accommodation under Title III. Rather, the plaintiffs have presented a very different theory, one wholly distinct from the complaint and the arguments presented below. Their appellate brief, for

10

the first time, argues that Southwest Airlines <u>as a whole</u> is a place of public accommodation because it operates a "travel service," and that it has violated Title III precisely because of the web site's <u>connection</u> with Southwest's "travel service."

Indeed, the plaintiffs' summary of the argument in the front of their blue brief alleges, for the first time, that "Southwest <u>Airlines</u> is a 'travel service' and thereby one of the ADA's covered public accommodations." <u>Id.</u> at 9 (emphasis added). The titles of the brief's sections also make this abundantly clear. The overall heading of the plaintiffs' substantive argument says: "As a public accommodation, Southwest cannot discriminate against persons with disabilities in the provision of travel services offered through their Internet website." Appellants Brief at 10. Subsection A.1. of the argument asserts that "Title III applies to privileges and services of a public accommodation, even when provided off-site through the Internet." <u>Id.</u> at 17. Subsection A.2. says: "Although Southwest's Internet website has a nexus with a physical facility, the ADA nevertheless prohibits discrimination in the prov[i]sion of services of a place of public accommodation." <u>Id.</u> at 21. Subsection A.3. reads: "The absence of spec[]ific mention of services provided off-site does not restrict the ADA's coverage." <u>Id.</u> at 24.

None of these headings -- nor, notably, any of the text that follows -- give any hint that the plaintiffs have any intention of rearguing that Southwest.com is itself a place of public accommodation. Rather, they focus on the "travel service" provided by the airline, of which Southwest.com is merely a part, and they now claim that a Title III violation is the result of the connection between the inaccessible web site and the travel service provided by the airline. The plaintiffs expressly say that "the internet . . . is a mechanism to take advantage of the goods and services offered by a public accommodation, in this case, a travel service." Id. at 28. They also claim that "an internet website is merely one device, similar to a telephone, a ticket counter, or a facsimile machine, that Southwest, a public accommodation, uses to place its services in the marketplace." Id. at 17 (emphasis added).

Our problem on appeal is that the new argument depends on critical facts (and a new theory) neither alleged in the complaint nor otherwise presented to the district court. Simply put, the plaintiffs now contend that "there is a sufficient nexus between [Southwest's] physical 'facilities' and their off site internet use to prohibit discrimination." Id. at 22. To support this claim, the plaintiffs must show that these "physical 'facilities'" exist and that they bear a reasonable "nexus" or connection with Southwest.com that subjects it to the public accommodations

12

requirements of Title III. The plaintiffs say for the first time on appeal that "Southwest is introducing self-service physical kiosks at physical airport facilities in which it operates," id., and that "Southwest maintains many physical locations throughout the United States, including its headquarters in Texas, and locations throughout airports at its destination cities," id. at 21. These factual averments were never made in district court. Likewise, the complaint made no reference to the "travel service" category of places of public accommodation, 42 U.S.C. § 12181(7)(F), instead alleging that Southwest.com was a place of public accommodation because it was a "place of exhibition, display and a sales establishment," see id. § 12181(7)(C), (E), (H). The district court never had the opportunity to consider the merits of the new "nexus" claim, and, indeed, the defendant never had the opportunity to respond to the new allegations.

At oral argument, the plaintiffs again focused on their new claim that Southwest Airlines operates a travel service that operates, among other ways, through Southwest.com. Thus, the claim presented to the district court -- that Southwest.com is itself a place of public accommodation -- appears to us to have been abandoned on appeal, and a new (and fact-specific) theory -- that Southwest.com has a "nexus" to Southwest Airlines' travel service -- has been

13

raised for the first time on appeal.  For the reasons we detail at some length, we

believe it is improper for us to evaluate the merits of either.

### III.

In the first place, the law is by now well settled in this Circuit that a legal

claim or argument that has not been briefed before the court is deemed abandoned

and its merits will not be addressed.  The Federal Rules of Appellate Procedure

plainly require that an appellant's brief "contain, under appropriate headings and

in the order indicated . . . a statement of the issues presented for review."  Fed. R.

App. P. 28(a)(5).  See AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361

F.3d 1305, 1308 (11th Cir. 2004) ("BAS argued to the district court that it should

have been included in the plaintiff class because it was a purchaser of Notes.  It

has declined to renew that argument on appeal, and the argument is deemed

abandoned as to BAS."); United States v. Nealy, 232 F.3d 825, 830 (11th Cir.

2000) ("Parties must submit all issues on appeal in their initial briefs."); United

States v. Mejia, 82 F.3d 1032, 1036 n.4 (11th Cir. 1996) (same); Fitzpatrick v.

City of Atlanta, 2 F.3d 1112, 1114 n.1 (11th Cir. 1993) (same); Greenbriar, Ltd. v.

City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (same); Fed. Sav. &

Loan Ins. Corp. v. Haralson, 813 F.2d 370, 373 (11th Cir. 1987) (same).

14

Any issue that an appellant wants the Court to address should be specifically and clearly identified in the brief. As we recently said in <u>United States v. Jernigan</u>, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003):

> Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue -- even if properly preserved at trial -- will be considered abandoned. . . .
>
> . . . .
>
> Our requirement that those claims an appellant wishes to have considered on appeal be unambiguously demarcated stems from the obvious need to avoid confusion as to the issues that are in play and those that are not.

<u>Id.</u> at 1283 n.8. If an argument is not fully briefed (let alone not presented at all) to the circuit court, evaluating its merits would be improper both because the appellants may control the issues they raise on appeal, and because the appellee would have no opportunity to respond to it. Indeed, evaluating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system. As the First Circuit has stated, "[i]n preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed." <u>Pignons S.A. de Mecanique v. Polaroid Corp.</u>, 701 F.2d 1, 3 (1st Cir. 1983) .

Simply put, the plaintiffs' appellate brief and oral argument have not alleged that Southwest.com is itself a place of public accommodation. As such, we deem this argument abandoned and do not address its merits.

## IV.

Rather, on appeal, as detailed above, the plaintiffs have advanced, for the first time, a very different theory and argument. Neither the complaint presented to the district court nor the response to the defendant's motion to dismiss relied upon the "travel service" provision of Title III, 42 U.S.C. § 12181(7)(F), and the plaintiffs did not argue that Southwest Airlines as a whole is or operates a travel service. Nor did the plaintiffs say anything in district court about a physical "nexus" between Southwest.com and some physical location that could qualify as a place of public accommodation. Their failure to do so requires us to address whether we may now consider their "nexus" argument on appeal.

This Court has "repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.'" Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994) (quoting Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991)); see also Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1222 n.8 (11th Cir. 2004) ("The district court was not

16

presented with and did not resolve an equal protection argument based on Surfside's treatment of private clubs and lodges. Therefore, we will not consider this argument on appeal."); Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because he raises that argument for the first time in his reply brief, it is not properly before us."); Hurley v. Moore, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."); Nyland v. Moore, 216 F.3d 1264, 1265 (11th Cir. 2000) (same); Provenzano v. Singletary, 148 F.3d 1327, 1329 n.2 (11th Cir. 1998) (same); FDIC v. Verex Assurance, Inc., 3 F.3d 391, 395 (11th Cir. 1993) (same); Allen v. State of Ala., 728 F.2d 1384, 1387 (11th Cir. 1984) (same); Spivey v. Zant, 661 F.2d 464, 477 (5th Cir. Unit B Nov. 1981)[1] (same); Easter v. Estelle, 609 F.2d 756, 758-59 (5th Cir. 1980)[2] (same). The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions -- particularly fact-bound issues -- that districts court

---

[1] In Stein v. Reynolds Secur., Inc., 667 F.2d 33 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

[2] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

17

never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.

In <u>Irving v. Mazda Motor Corp.</u>, 136 F.3d 764 (11th Cir. 1998), we expressed our concern that "[t]oo often our colleagues on the district courts complain that the appellate cases about which they read were not the cases argued before them. We cannot allow Plaintiff to argue a different case from the case she presented to the district court." <u>Id.</u> at 769. We share that concern. Plainly, as an appellate court with no fact finding mechanism, and, indeed, without any factual averments made in the trial court, we are naturally hesitant to consider this claim. We also observe that the plaintiffs had every opportunity to raise the new theory in district court, whether in their initial complaint or in an effort to amend their complaint.[3] As best we can tell, at no time did the plaintiffs do so.

The argument that the plaintiffs have raised on appeal is not only new, but also one that is highly dependent on specific facts regarding Southwest Airlines' physical locations and "travel service," and their connections with the

---

[3] At oral argument before this Court, counsel for the plaintiffs argued that they did not amend their complaint because, in light of the district court's dismissal of their case, doing so would have proven futile. This argument makes little chronological sense to us. The order dismissing the case came <u>after</u> the complaint and all relevant briefs; as such, the plaintiffs had no way of knowing that the district court would not agree with their Title III claims until after the dismissal order was given. Besides, the order dismissing the case said nothing about the "travel service" argument, focusing solely on whether Southwest.com itself was a public accommodation. As such, the "futility"argument is an unpersuasive one.

18

Southwest.com web site. It is undeniable that these facts were never alleged in a claim presented to the district court; were never explicated in any document or argument before that court; and no discovery was ever conducted about them. As a result, the district court never had an opportunity to make any findings as to the new allegations, and we have nothing to go on other than scattered (and unsupported) factual references in the appellants' brief before this Court. Thus, it would be improvident for us to try to grapple with the important question whether Southwest Airlines operates a "travel service" and whether Southwest.com has a sufficient "nexus" to that travel service to subject the site to Title III.

This question is rendered still more difficult because airlines such as Southwest are largely not even covered by Title III of the ADA. See 42 U.S.C. § 12181(10) (defining the "'specified public transportation'" covered by Title III as "transportation by bus, rail, or any other conveyance (other than by aircraft)" (emphasis added)); see also Love v. Delta Air Lines, 179 F. Supp. 2d 1313, 1316 (M.D. Ala. 2001) (saying that "aircraft are expressly excepted from the statutory definition of 'specified public transportation'"), rev'd on other grounds, 310 F.3d 1347 (11th Cir. 2002). Rather, airplanes and their accompanying terminals and depots are covered by another disability-access statute, the pre-ADA Air Carriers Access Act, 49 U.S.C. § 41705 et seq. (the "ACAA"). Thus, the question whether

19

Southwest owns and operates anything that might fall outside the air travel

exemption in Title III is one that would depend on a thorough and meticulously

calibrated factual analysis -- an analysis that the district court was never asked to

perform, and that we are unable to competently perform for the first time on

appeal.

We recognize that a circuit court's power to entertain an argument raised for

the first time on appeal is not a jurisdictional one; thus we <u>may</u> choose to hear the

argument under special circumstances. <u>See</u> <u>Dean Witter Reynolds, Inc. v.</u>

<u>Fernandez</u>, 741 F.2d 355, 360 (11th Cir. 1984) (saying that the notion that an

appellate court will not consider issues not raised before the district court is "not a

jurisdictional limitation but merely a rule of practice"). We have permitted issues

to be raised for the first time on appeal under five circumstances:

> First, an appellate court will consider an issue not raised in the district
> court if it involves a pure question of law, and if refusal to consider it
> would result in a miscarriage of justice. Second, the rule may be
> relaxed where the appellant raises an objection to an order which he
> had no opportunity to raise at the district court level. Third, the rule
> does not bar consideration by the appellate court in the first instance
> where the interest of substantial justice is at stake. Fourth, a federal
> appellate court is justified in resolving an issue not passed on below .
> . . where the proper resolution is beyond any doubt. Finally, it may be
> appropriate to consider an issue first raised on appeal if that issue
> presents significant questions of general impact or of great public
> concern.

Wright v. Hanna Steel Corp., 270 F.3d 1336, 1342 (11th Cir. 2001) (quoting

Narey v. Dean, 32 F.3d 1521, 1526-27 (11th Cir. 1994) (quoting Dean Witter

Reynolds, 741 F.2d at 360-61 (footnotes and internal citations omitted)))

(alteration in original).

As we see it, none of these exceptional conditions is found in this case. As

for the first such condition listed in Dean Witter Reynolds, the new theory is

plainly not "a pure question of law," because it raises considerable questions of

fact. The plaintiffs' argument hinges on whether there is a sufficient "nexus"

between Southwest.com and a place of public accommodation to warrant a finding

that the web site is covered by Title III. The questions whether and where various

facilities (such as airport ticket counters, corporate headquarters, and rent-a-car

offices) are owned and operated by Southwest, whether, in the aggregate, they

qualify as a "travel service," and whether they are sufficiently connected to

Southwest.com to subject it to Title III, are undoubtedly mixed questions of fact

and law, and cannot be deemed to be covered by this exception to the general rule

against entertaining issues raised for the first time on appeal.

As for the second exception, the appellants have raised no objection to any

order that they had no opportunity to raise before the district court. On the

contrary, the record strongly suggests that they had every opportunity to raise the

"nexus" theory before the district court. They chose not to do so, and we can divine no reason to evaluate this fact-specific theory for the first time on appeal.

As for the third exception, we do not believe that, in this case, "the interest of substantial justice is at stake." Although this exception is theoretically broad, covering any case where a court genuinely concludes that the equities favor the party raising a new issue, as best we can tell, this Court has never once elected to evaluate a new argument on this basis. See Wright, 270 F.3d at 1342 (citing but declining to apply this exception); Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd., 215 F.3d 1217, 1224 (11th Cir. 2000) (same); Blue Cross & Blue Shield of Al. v. Sanders, 138 F.3d 1347, 1357 & n.12 (11th Cir. 1998) (same); Narey, 32 F.3d at 1526-27; Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1512-13 (11th Cir. 1991) (same); Dean Witter Reynolds, 741 F.2d at 361 (same); Matter of Novack, 639 F.2d 1274, 1276-77 & n.5 (5th Cir. Unit B Mar. 1981) (same); Response of Carolina, Inc. v. Leasco Response, Inc., 537 F.2d 1307, 1324 (5th Cir. 1976) (same).

To find an example of an application of this exception, we have to go back nearly three decades to a case before the former Fifth Circuit. In Edwards v. Sears, Roebuck and Co., 512 F.2d 276 (5th Cir. 1975), the defendants appealed a $450,000 judgment for manufacturing and retailing tires whose failure allegedly

22

caused a fatal car accident. During closing argument at trial, counsel for the

plaintiff said that a Sears representative had testified that, after the victim's death,

the manufacturer had taken off the market the manuals that mentioned the speed

and inflation pressures that were safe for the tire. Id. at 284. This claim about the

representative's testimony was patently false; there had been no such testimony.

Id. at 284-85. Furthermore, in closing argument, counsel for the plaintiff also

made highly prejudicial and inflammatory remarks about the astronomical value

his own son would have placed on his father's life, about his personal association

with the decedent, and evoked the image of decedent's children crying at grave

site. Id. at 285.

On appeal, plaintiff's counsel did "not seriously urge that their remarks

were fair and proper, and they could not reasonably do so." Id. at 286. Rather,

they argued that the issue was being raised for the first time on appeal because the

statements had not been objected to at trial and thus should not be entertained on

the merits on appeal. Id. The Fifth Circuit rejected this argument, observing that

it did have the power to consider issues not objected to at trial but only "in

exceptional cases where the interest of substantial justice is at stake." Id. The

Court believed that counsel's behavior at the Edwards trial led to such an unusual

circumstance, but took pains to "emphasize, however, our continued reluctance to

23

address for the first time on review errors which the trial court was not given an opportunity to consider and correct." Id.[4]

We can not discern any miscarriage of justice in this case. If the "nexus" argument was an overriding question involving substantial justice, it baffles us that the plaintiffs did not raise it in the district court. Unlike in Edwards, where the opposing party virtually admitted that it had done wrong, we have before us a highly contentious and important question. It is also very different to raise an issue on appeal based on statements that counsel may have failed to object to in the split-second pressure of argument in a jury trial, as opposed to fact-bound issues that the party had an opportunity to present to the district court.

As for the fourth exception, the plaintiffs' "nexus" argument is plainly not one "where the proper resolution is beyond any doubt." First of all, as noted, the argument depends on an evaluation of facts that were not alleged in the complaint. To resolve the question whether Southwest.com had a sufficient "nexus" to physical locations to subject it to Title III of the ADA, we would have to evaluate

---

[4]Other instances of the application of this exception have also tended to involve appeals based on prejudicial statements at trial that were not objected to. See, e.g., San Antonio v. Timko, 368 F.2d 983, 986 (2d Cir. 1966) (Friendly, J.) (allowing appeal of a verdict because plaintiff's counsel's summation at trial had engaged in inappropriate personal attacks against the defendant and his attorney, and saying that "[a]lthough defense counsel did not take exception to this, the impropriety of the argument was so flagrant as to constitute 'fundamental error'" (citation omitted)); Klotz v. Sears, Roebuck & Co., 267 F.2d 53, 55 (7th Cir. 1959).

extensive factual records and testimony about Southwest Airlines' physical

locations and their connection to the web site.  Again, we are unable to do so

because these matters were never presented to the district court.  And again, this

question is complicated further because many, if not all, of Southwest Airlines'

physical facilities may be explicitly exempted from Title III, which does not cover

the terminals or depots of aircraft.  42 U.S.C. § 12181(10).  In short, this is a

difficult question, and one about which there is considerable doubt.

Furthermore, even the purely legal question of the application of Title III to

Internet web sites is far from "beyond any doubt."  In addressing the question, we

would be wading into the thicket of a circuit split on this issue.  Compare Carparts

Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc., 37 F.3d 12,

19-20 (1st Cir. 1994), and Doe v. Mut. of Omaha Ins. Co., 179 F.3d 557, 559 (7th

Cir. 1999) (suggesting that web sites can be considered public accommodations),

with Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1010-13 (6th Cir. 1997), Ford

v. Schering-Plough Corp., 145 F.3d 601, 612-14 (3d Cir. 1998), and Weyer v.

Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000) (finding

otherwise).  Plainly, this is not an easy question.

As for the final exception to the general rule -- that an issue may be

presented for the first time on appeal if it "presents significant questions of general

25

impact or of great public concern" -- we do not believe that this case is appropriate for application. The question raised before the district court -- whether a web site is a place of public accommodation covered by Title III -- is a question of substantial public interest, because it concerns the application of one of the landmark civil rights statutes in the country to a major new form of media that has only gained wide use in the past decade. However, the plaintiffs' argument before this Court that Southwest.com is covered by Title III because of its "nexus" with Southwest Airlines' "travel service" is narrower, and complicated by the specific exemption that Title III gives to airlines. Because of the special exemption Congress has given to the airlines, but not to other forms of public transportation (or to the numerous other forms of public accommodation listed in Title III), any ruling we would make would likely be inapplicable to any future cases other than to challenges of airline web sites. And this case would shed little light even on Title III challenges to other airline web sites, because our ruling would necessarily be based on facts specific to the physical places owned and operated by Southwest Airlines.

Accordingly, we are constrained to conclude that this case is not one of the "exceptional" ones in which we should elect to entertain a new theory and

26

argument never raised in the district court. Indeed, to evaluate it now, without the benefit of any record or district court ruling, invites disaster for an appellate court.

In declining to evaluate the merits of this case, we are in no way unmindful that the legal questions raised are significant. The Internet is transforming our economy and culture, and the question whether it is covered by the ADA -- one of the landmark civil rights laws in this country -- is of substantial public importance. Title III's applicability to web sites -- either because web sites are themselves places of public accommodation or because they have a sufficient nexus to such physical places of public accommodation -- is a matter of first impression before this Court. Unfortunately, this case does not provide the proper vehicle for answering these questions.

Thus, as we see it, there are no substantive questions properly before us. We will not address a claim that has been abandoned on appeal or one that is being raised for the first time on appeal, without any special conditions. Accordingly, we must dismiss this appeal. See Morehead v. Stewart, No. 00-17482, 2002 WL 31056613, at *1 (9th Cir. Sept. 16, 2002) ("Because Morehead has waived the only issue properly before us, we must dismiss his appeal."); Chevron USA Inc. v. School Bd. Vermilion Parish, 294 F.3d 716, 718 (5th Cir. 2002) ("Because we find that there is no appealable order properly before us, we dismiss the appeal.");

Smith v. Principi, No. 00-7176, 2002 WL 745980, at *4 (Fed. Cir. Apr. 18, 2002);

Bines v. Kulaylat, 215 F.3d 381, 383 (3d Cir. 2000) ("Because we hold that such

an order is not final, and that the qualified-immunity issue is not properly before

us, we will dismiss this appeal for lack of jurisdiction."); FDIC v. Letterman Bros.,

980 F.2d 1298, 1300 (9th Cir. 1992) ("Those issues have not been briefed in this

appeal and are not properly before this court.  We therefore DISMISS this appeal

for lack of an appealable judgment."); Whittemore v. Farrington, 234 F.2d 221,

227 (9th Cir. 1956) ("The jurisdictional amount of $5000 not appearing and no

federal question being properly before us the motion to dismiss the appeal is

granted.").

**DISMISSED.**

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia